PATRICK RYAN, as ADMINISTRATOR, ETC., of ALICE RYAN, DECEASED, PLAINTIFF, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, DEFENDANT.

*Negligent killing of a child crossing a railroad track — when the question of negligence should be left to the jury.*

The plaintiff's intestate, a bright, intelligent girl eight years old, lived with the plaintiff on the north side of Van Anden street, in Syracuse, a few doors to the east of the place where the said street was crossed, at right angles, by twelve tracks of the defendant, a railroad company. The crossing was in a thickly-settled portion of the city, and no flagman was kept there. The plaintiff left her home in the afternoon to go to a grocery store situated in a street lying west of the crossing. As she approached the tracks a freight train passed over the street, going north, on one of the middle tracks, at the rate of some fifteen miles an hour. The deceased stopped and looked at the passing cars, turning her face towards the north, the direction in which the cars were moving. As soon as the last car had passed, and without looking towards the south, she stepped forward to cross the tracks, when she was struck and killed by a caboose car which had been detached from and was following the train at a rate of five or six miles an hour. The caboose car crossed the south side of Van Anden street as the rear car of the train was leaving the north line thereof.

In an action to recover damages for the negligent killing of the intestate:

*Held*, that the court erred in non-suiting the plaintiff; that the question of the contributory negligence of the deceased and that of the defendant's negligence should have been left to the jury.

MOTION by the plaintiff to set aside a nonsuit, and for a new trial, in a case tried at the Cayuga Circuit.

The action was brought to recover damages for the alleged negligent killing of Alice Ryan, the plaintiff's daughter. The exceptions were ordered to be heard at the General Term in the first instance.

*Howland & Wheeler*, for the plaintiff.

*W. H. Adams*, for the defendant.

BARKER, J.:

On this motion we may assume that the nonsuit was granted on two grounds: First. That the plaintiff failed to establish any negligence on the part of the defendant; and, Second. That from

all the evidence presented, it appeared that the intestate herself was guilty of contributory negligence.

The plaintiff now contends that the evidence fairly tended to support the reverse of both of these propositions, and the truth of the contention should have been submitted to the jury for their determination. The material facts can be briefly stated. The accident, which resulted in the death of the intestate, occurred in the city of Auburn, at Van Anden street crossing; the street runs east and west and is forty-nine feet wide. The defendant's tracks, twelve in number, cross the street at right angles and at grade. This crossing is in the thickly settled part of the city, houses and stores being located on the north side of the street and on both sides of the tracks. The plaintiff lived on the north side of Van Anden street, some ten rods east from the tracks, and the deceased, a bright and intelligent girl, eight years old, lived with him. When injured she was crossing the tracks over the sidewalk, on the east side of the street, while on her way to a grocery store in State street, which intersected Van Anden street a few rods west of the place of crossing. She had before visited the store, that afternoon, and returned to her home, and was at this time on her way to do another errand at the same place. She, as well as the family, were familiar with the tracks, and frequently crossed them at this place. She had attended school in another part of the city and was accustomed to be in the street unattended. The defendant did not keep a flagman at this crossing. As she approached the tracks on this occasion a long freight train, drawn by one engine, passed over the street, going east, on one of the middle tracks, at the rate of some fifteen miles an hour. The deceased stopped east of all the tracks and some fifteen feet from the moving train as it passed over the street and sidewalk on which she stood, and, as the evidence tended to prove, she was observing the passing cars with her face partly turned to the east, the direction in which the train was moving, and as soon as the last car passed over the sidewalk she stepped forward on to the tracks without turning her face to the west, the direction from which the caboose came which struck and killed her. If she had looked to the west before moving from where she stood she could have seen the caboose before it came into Van Anden street and in time to have escaped the injury.

Without saying the defendant was guilty of manifest negligence in operating its road on this occasion, which resulted in the death of the intestate, we are of the opinion that the question of negligence should have been submitted to the jury for their determination. As this train was nearing the crossing, the caboose being the last car in the train, it was disconnected from the train and by its momentum followed the train at a lower rate of speed, so that when it reached Van Anden street it was running at the rate of five or six miles an hour, and as the main part of the train passed out of the street to the east, the caboose was near, as the proof tended to show, the west line of the street. There was a brakeman on the caboose near the forward end, for the purpose of working the brake, and the proof tended to show that he did not observe the girl until the car was within forty or fifty feet of the place where she was struck, and that he then immediately set the brake, and when the car came to a stand the forward trucks were over her body.

There is ample room for saying that in running this car in this manner in and upon Van Anden street, the defendant was guilty of negligence and violated a duty it owed to the deceased, who was rightfully upon the street and crossing the tracks at the time she was injured. It was a street much used by all classes of persons. Passers-by who are detained in a street by a moving train made up of many cars and running so fast as fifteen miles an hour, are induced to believe, from the usual way of operating railroads, that as soon as the last car passes it is safe and prudent to cross the track on which the train is moving, and that danger is not to be apprehended by the movement of a detached car running on the same track and in the same direction as the train which has just passed and only a few feet distant therefrom.

The degree of care exacted of railroad corporations crossing streets and highways varies according to the circumstances of the case. At crossings in the busy parts of cities and populous towns they are bound to exercise a very high degree of vigilance. The degree of care imposed by the law is not capable of exact definition, but, as the danger increases, arising from the mode of operating the road by moving cars on the tracks, or from the surrounding obstructions hiding from view the approach of trains, the duty of

exercising increased caution and vigilance is imposed. It is not enough in all cases to absolve a railroad corporation from the charge of negligence that the statutory signals are given. The circumstances may be such as to require other precautions in the running of a train, or in the use and occupation of the tracks. There may be negligence which will charge the company, other than the bare omission to sound the whistle or ring the bell as required by the statute. (*Weber* v. *N. Y. C. and H. R. R. R. Co.*, 58 N. Y., 451.)

Allowing a detached car to run over a public street immediately in the rear of a passing train, without any warning being given of its approach, except that derived from the noise of its own tread, does expose travelers on foot or in carriages to more than ordinary danger. This is obviously so, and would be so pronounced by most persons who are familiar with the hazards incident to travel upon streets intersected by railroad tracks. The exposure is similar in kind and degree to that caused by making what is termed a "running switch," which may be termed a negligent act when done in a street or highway, unless the company exercise great and unusual caution in giving notice to travelers. (*Brown* v. *N. Y. Central R. R. Co.*, 32 N. Y., 600.)

This case presents such features that it was for the jury to say whether the defendant used due and proper care in running the detached car as it did, without notice being given of its approach. If the deceased had been an adult, we could not say, as a matter of law, under the circumstances of this case, that she was guilty of negligence in omitting to make an observation as to the condition of the track on which she was killed, before stepping on the same. In determining the question of her negligence, allowance must be made for her age and inexperience, and the same degree of care is not expected of a person of her years as of adults. The rule is now well settled that the same degree of care is not required of an infant of tender years as is required of an adult. An infant to avoid an imputation of negligence is bound only to exercise that degree of care which can be reasonably expected of one of its age, and in passing on the question of contributory negligence the age of the infant, with all the other circumstances of the case, is to be considered by the jury. (*Dowling* v. *N. Y. C. and H. R. R. R.*, 90

N. Y., 671, and the cases there cited; see, also, *Haycroft* v. *L. S. and M. S. R.*, affirmed on appeal in 64 N. Y., 636.)

In the last cited case the facts and circumstances are strikingly· like those in this, so far as the question of contributory negligence is concerned, and a nonsuit was set aside, one having been granted at the circuit on the defendant's motion.

New trial granted, with costs to abide the event.

BRADLEY and HAIGHT, JJ., concurred; SMITH, P. J., taking no part.

Motion for new trial granted, with costs to abide the event.